We're going to move now to Appeal 24-1708, Dennis Wilson v. United States, and we'll begin with oral argument from you, Mr. Tolliver. Good morning, Your Honors. May it please the Court. Terry Tolliver, appearing on behalf of Mr. Wilson. We're here today to discuss whether Mr. Wilson's counsel was ineffective when she gave inaccurate advice, which ultimately led Mr. Wilson to agree to a plea agreement. And here, the reason why we believe that the—why Mr. Wilson is here is because he was under the impression that he was subject to a life sentence, and this was also the government's position as well as his counsel's position. This is really not a case about whether the plea agreement was fair or the sentence was reasonable. It's just whether Mr. Wilson was fully informed when he entered into the plea agreement. Can I ask you a couple questions?  The briefs are good. I think we understand what happened here. If what you just said is right, Mr. Tolliver, what confuses me is how Mr. Wilson could have made sense out of the plea agreement. As far as— In other words, this is a very odd situation because what you're saying is that your client thought that if he went to trial and got convicted, he would face a mandatory life sentence, right? Correct. But that if he was convicted by plea, he would not face a mandatory life sentence. Correct. Okay. Are there any federal statutes that work like that? Where he thought— Where Title 18 exposes a defendant for exercising a right to go to trial, exposes a defendant to a heightened criminal punishment, but takes that heightened criminal punishment off the table if the defendant chooses to plead guilty to the same charge. I don't know of any provision in Title 18 that works that way. Your Honor, certainly in a plea context, I've seen that, where there was a potential for life imprisonment, and then that's negotiated down as part of the plea. Mandatory life imprisonment? So somebody, for example, if somebody commits an act of terrorism against the United States, right, and it's a mandatory life penalty. If they can choose to plead guilty to that, but they'll face a mandatory life sentence.  They may do it in exchange for avoiding the death sentence or something like that. So there could be reason to do it. Correct. In this case, I think the sentencing range was 360 to life based upon his guidelines, so not a mandatory life sentence. I think really what the issue that we're looking at here is whether Mr. Wilson had the information that he needed in order to knowingly enter into a plea agreement. And when you're looking at it from a criminal defendant's perspective, when you hear that life is a possibility, anything less than life is a benefit to you. And I think that's what we're looking at here, was Mr. Wilson looking at this from, well, it's certainly better than life, so I've got to take it, when life was never really an option. I mean, it would be very surprising to me if we knew what everything happened, that he was advised that the only way to avoid a mandatory, statutory mandatory life sentence is to plead guilty. That would really surprise me. And that may be, Your Honor, but again, I think here what we're looking at is more from, more fundamental than that. Was Mr. Wilson given the information that he needed in order to enter into this plea, and then it's Mr. Wilson's position that he was not. Yeah, what really, I mean, just getting right down to it, what really concerns me is, I think, what did he think was going to happen at any trial? That this evidence seems absolutely overwhelming to me, and it's an egregious criminal offense. So, of course he's going to plead, I mean, odds are a defendant faced with that situation is going to choose to plead guilty, and then work as hard as he possibly can to drive the sentence down. That's the way it's going to be approached. Again, Your Honor, I think we've got to look at it from a more fundamental perspective. Clients are allowed to make good decisions. Clients are certainly allowed to make bad decisions. What we're looking at here is whether it's a fully informed decision. Mr. Tolliver, can I echo what Judge Scudder said? I think, what's the prejudice? Let's say defense counsel made an error. The prejudice is that if he had been fully informed, he would not have accepted the government's offer, and he would have went to trial. I don't see that argument. What did he think would have happened at the trial? Well, so… The trial would have been a disaster. Could have been. Probably would have been. There's pretty strong evidence here. Yes, but bad, bad evidence. I mean, it's not a kind of tongue-in-cheek point. I mean, he has rights, and we would want to assume that he's exercising his rights to reduce the amount of time that his liberty is deprived. And it seems to me that choosing to plead guilty on this evidence is absolutely the right decision based upon what I know about it. Well, absolutely. When you believe that you're facing a life sentence, again, anything less than life is to your benefit. But clients go to trial for all kinds of reasons. Sometimes they're willing to just roll the dice and see what happens because the difference between the plea agreement and what the potential risk is isn't sufficient enough for them to say, this is what I want to do. I want to avoid the risk and enter this plea. Is there any contemporaneous evidence anywhere that suggests he wanted to go to trial? Other than Mr. Wilson stated in his initial filing that he was misinformed of the sentence range that he was facing. So as far as a statement saying, I want to go to trial, I'm not aware of that. I think the evidence shows that he was certainly concerned about sentence exposure when he made his decision. It just seems to me it's almost like he had to turn his ears off at the plea because a required aspect of the plea is that he's advised as the sentencing ranges. And if his understanding is correct, you'd expect to see a passage in the plea where the district court told him, and it certainly did not happen because it's wrong legally, that if he chose to go to trial and was convicted, he'd face a statutory, mandatory life sentence. You would expect to see that in the plea transcript. And I apologize, Your Honor. Well, this court's certainly seen similar situations where defendants often rely upon the low end because, oh, I was promised this and forget that it was a range. But I think the same is true in this particular case where you look at it. When you're told that you're facing a life sentence, the only thing you hear is life, and that's what your focus is on. How do I eventually get out of prison one day? So anything that I can do to do that, I'm willing to do that. And again, that's the reason why we're here is because there was a mistake between the parties, and Mr. Wilson was not fully informed when he entered into the plea agreement. Thank you, Mr. Toliver. You can reserve the remainder of your time. Thank you, Your Honor. Very good. Thank you. Mr. Reitz, we'll move to you now for argument on behalf of the government. You may please the court. At the risk of alighting our best arguments and substantive analysis here, Judge Scudder, I'll start with your question. I think at least the government was confused below about the 3559E charge. I think we thought we could plead away from it. Of course, we didn't. I don't understand that at all. That was a mistake. How the government could make a mistake like that with whether a defendant faces a mandatory, congressionally imposed life sentence. I don't understand that myself anyway. I don't think that impacts the ineffective assistance of counsel argument. Can I interrupt here on that point? Is this an offense where the government has to file an information in order to get the enhanced sentence? You know what I'm talking about? It's not like an 851. Yeah, that's what I was asking. That would affect it, right? The government just doesn't file the information, and they don't file the information, and therefore he's not subject to a mandatory life sentence. He's only subject to the statutory maximum. That is not understanding, and certainly not the understanding the district court had either in the post-conviction. I'm frustrated by what I see in the record here. I don't know exactly what happened, so I have to be a little bit careful here. I don't know who was advised what, everything that was represented, but this idea that a defendant thought that if I plead guilty, I'm going to face a term of years, but if I exercise a constitutional right to go to trial, I'm going to expose myself to a mandatory life sentence upon conviction for the same charged offense. Something is really messed up for thinking like that to be going on. To the extent that we drove that analysis, yes, I wish we could take that back. That being said, I think while you could conceive of a particular case where that might be problematic, it's not this case, because the defendant, if that was right about the 3559, it would be life. If we take that to the side, his highest sentence would be effective life, so he still has the same motivation to plead based on the high end of the sentence, and as the court discussed, the severity of the charges, the strength of our case, so we don't think that it ultimately impacted his decision whether to plead guilty or not. Hence the questions Judge Kirsch and I have. What does he think would have happened at trial? Yeah, certainly we think he would have been convicted. I think that's almost certitude, and he would have had more charges and more convictions then. He would not have had acceptance of responsibility. He would have had a potentially higher statutory sentence because there would be no C plea. Yes, he would have had the possibility of 10 fewer years. It seems unlikely that he would have got the minimum. Of course, the defense counsel, who in this case is an experienced public defender, didn't even request the minimum of the C plea because she recognized that was a futile request. So yes, I think even if he had been perfectly informed, which I will say we don't know about that. We know what the government thought. We don't know that he wasn't informed correctly from the defense counsel. We only know what we thought. Even if he was informed at the highest level of competency, this is what would have happened in the case. So for those reasons, we would ask the court to affirm. Thank you, Mr. Reitz. Mr. Tovre, let's go back to you now for rebuttal argument. Thank you, Your Honor. Your Honor, again, I think we'd want to start with the life versus effective life. That is not the question that we're here for. It's what was Mr. Wilson informed of? And here, I think it was twofold. One is the life issue that we discussed, but the other is that Mr. Wilson effectively pleaded to the enhancement as part of the plea agreement when, as we outlined in the brief, it was not an enhancing offense under the statute. And for that, we believe that he had ineffective assistance of counsel, and we'd ask that this court allow him to withdraw from the plea agreement. Thank you, Mr. Tovre, and thanks from the court to you and your firm for handling this case. You've been appointed counsel, and you have our thanks, as does Mr. Reitz. Thank you for giving us the opportunity, Your Honors. Thank you. The case will be taken under advisement.